You may be seated. The next case of the morning is Sassano v. Nelson, ADM, St. Mary's Hospital, pain consultants, etc. and the attorneys before us for the appellant, Mr. Toth and Mr. Wetzel, for the appellee, Mr. Stocks and Mr. Shea. You may proceed. May it please the court, counsel. My name is Nathan Wetzel. I'm here, I represent St. Mary's Hospital in this matter. We've divided our time, your honors, with regard to the appellant's briefs here and I am here to address the apportionment issue. Mr. Toth is going to address the consolidation issue in the briefs. As you're aware, as this case has developed, there are really two separate cases here in the underlying case. There is one with regard to a car accident and then several years later, while seeking treatment for a neck injury from the car accident, there was a radio frequency ablation procedure performed by Mr. Toth's client at my client's hospital, which is allegedly a cause of an exacerbation of the neck injury that she had had from the car accident. Because of that, ADM and Nelson brought a third-party complaint against several of the defendants in this case, including my client, including Dr. Shobitia, PCCI, Dr. Fancher. After that happened, ADM and Nelson reached a settlement agreement with the plaintiff. There is no question, none of the defendants objected to the amount of the settlement agreement. What we objected to and what we believe was in bad faith is the allocation of the settlement agreement. The court didn't, and the reason that that's an issue is because there are two separate cases here. With regard to the medical malpractice case, all of the defendants would be awarded a set-off for the proper amount of the allocation of the damages that occurred after the surgery took place in the event that there was a judgment against all of the defendants. However, the amount of allocation, they put 97% of the allocation prior to that on the car accident and only 3% with regard to the medical malpractice. This despite the fact that it's undisputed that most of the plaintiff's damages that she claims were ongoing and affect her life happened after the exacerbation of the neck injury. So the vast majority of her damages are after this August 22, 2014, yet only 3% of the settlement amount is allocated to that time period afterwards. We believe that this is in bad faith. We went through a number of cases in our brief. We showed that you first need to really look at, to figure out an allocation. It's a separate test from the test of good faith. And that is in the Rydell case that we cited, which is a 5th District case in our brief, made it clear that you need to do not only a good faith finding, whether the settlement agreement is valid, but you also need to see if the allocation that is included in that settlement agreement is fair and reasonable. That wasn't done in this case. May I interrupt you for a moment and just simply ask you, does your client have standing to challenge the good faith nature of the settlement where your client did not file a third party action for contribution in this case, and the time for doing so has expired? And the answer to that is yes, Your Honor. And the reason is because the set-off, a set-off is you get a set-off for other parties settling, regardless of whether you file a contribution claim or not. You'll know the law is clear on that. I understand the concept of set-off. However, I'm not sure that I've seen anything in the briefs that would support an assertion that standing exists in the absence of a claim for contribution. I think that it does, Your Honor, because if you don't have that, then a plaintiff is entitled to a double recovery. And the Illinois law is very clear that a plaintiff cannot have a double recovery in the case. And in fact, the Henry case, and we discussed this in our brief, talks about this, where you have the various defendants who did not file a contribution claim. This is a Supreme Court case from 1990 involving St. John's Hospital here in town. And in that case, they found that even though at trial only 7% of the liability was attributable to St. John's Hospital, they needed to pay more than their pro rata share on that. And they would still be entitled to a set-off in an instance where the other party paid. And in fact, they were entitled to a set-off for the amount that the other party paid in that case, but they still needed to pay over their pro rata share. The contribution claim really affects pro rata share. It doesn't affect the set-off. And because this case doesn't involve pro rata share, and no parties have filed contribution claims, that's not what we're arguing here. What we're arguing here is what set-off are the defendants entitled to so that the plaintiff doesn't get a double recovery. Again, in Henry, they were allowed to receive only what they were awarded at trial. And if one party didn't pay the 93% that they needed to, they can still go after the other party to make themselves whole. But that doesn't mean that they get to go over the amount that they were awarded at trial. And in here, if there is a proper set-off, and actually if there isn't a proper set-off that is given in this case, if, for instance, the bulk of her damages are after August 22, 2014, and an ADM improperly allocates part of their settlement in this way, manipulates it so they don't pay that amount, then they're actually putting the burden for what they did on the other defendants at that time. The Illinois law is clear that that is not permissible. So under this case, the contribution is really a red herring. It's really going back to the set-off. And we actually addressed that in our brief as well. What we're saying is not that the circuit court needs to assess liability percentages for all of the defendants. We never made that argument. We're not making that argument now. What they need to do, what the circuit court needs to do, is they need to look at the settling party. They need to look at the liability they have. They need to look at the damages that the plaintiff has. And then they need to allocate to the proper time periods for that one settlement. So if the bulk of the damages are after August 22, 2014, and they are liable for those damages, or potentially liable for those damages, and if that's what they're settling, then they need to put the proper percentage of that settlement agreement attributable to the time period after August 22, 2014. They haven't done so in this case. They've manipulated the results so that the vast bulk of the damages that are being attributable to the entire big case overarching picture of the plaintiff are before August 22, 2014 without any reasonable explanation for doing so. And because they've done that, they've manipulated the allocation in this case, and thus the whole settlement is not in good faith with regard to the allocation. Not the amount, but the allocation. Well, the level of the injury changed as a result of the alleged malpractice, right? I mean, the assertion is that you have readily identifiable damages related to the auto accident. Subsequent medical care. Alleged malpractice having occurred because the ablation procedure was done at the wrong level of the cervical spine, and you have a readily identifiable second injury there. It seems that the parties to the settlement attempted to structure the good faith finding in that way. You're saying that that was not done in good faith. It wasn't, and we can even see from the actual good faith findings submitted by the plaintiff herself to come to that conclusion. She stated in there, it is the position of the plaintiff, that the defendant, A.D.M. Nelson, was liable for injuries caused by the RFA procedure. And as it is well-settled law that an original tortfeasor is liable for injuries caused by foreseeable treatment that aggravates the injury approximately caused by his negligence. Is this an aggravation of an injury, or is this alleged to be a new injury? It is an aggravation of the injury that she already had. She sought treatment for the pain in her neck. She went in for a procedure to have that taken care of, and it exacerbated her injury. They are absolutely connected. She would not have been in there if not for the car accident. At least she wouldn't have been in there but for the previous injury. But let's say that during the course of the ablation procedure, she was dropped off, you know, suffered some obviously different injury, fractured her arm, falling off the table or something of that sort. You wouldn't say that that's an aggravation of the original injury, simply because she wouldn't have been there but for the treatment. You're absolutely correct about that. You're absolutely correct, and I agree with that. The problem that we have here, though, is that there's really no finding of fact to that effect. The plaintiff has argued that they're absolutely connected. The whole reason that AVM brought us into the case is because they knew they could be liable for the parts of the RFA procedure. They also settled that part of the case. If they didn't believe they had any liability, then they should have cut it off and not assessed anything to the RFA procedure. But they did because they knew that they could be liable for that amount of money, and the bulk of the plaintiff's damages are after that point in time. That's the whole reason they brought the suit against us in the first place. To now argue that, oh, they're not connected at all, so the allocation is fair and reasonable, is really a manipulation. They're completely reversing course of the entire argument for the whole case to try to support their settlement agreement. As I said here, when you look at the plaintiff's good faith finding, they even say that they're still connected and that they're settling that claim. If they're connected and they're settling that claim, the allocation in this case makes absolutely no sense whatsoever beyond a manipulation of the settlement agreement to allow the plaintiff a double recovery for the amount of damage she suffered after the RFA procedure itself. I think my time is up, and I'm going to let Mr. Toth talk about any other consolidation issues. That is, unless you guys have any more questions for me. Thank you. Thank you. Maple Leafs Court. Counsel. Your Honors, my name is Kevin Toth. I represent Dr. Chauvetier in this matter, and I'm addressing the issue of consolidation. The issue brought on appeal is whether it was error for the trial court to not consolidate this 2013 case with the pending medical negligence claim, 2015-L-118. Noting for the court that the appellants raised this issue in their briefs, that the consolidation issue could be moved depending on resolution of the allocation issue. However, we do have to raise that issue at this point, otherwise it's waived going forward. ADM has argued in its brief that this court should dismiss the appeal because consolidation has no practical effect in any reversal of the good faith finding, does not revive any claims in the 2013 case. However, the apportionment issue, Your Honors, is a material term of the settlement. If that's determined to be in bad faith, if the court determines that it should be remanded for a different allocation, that affects the settlement and requires reallocation. In which case, this matter, the motor vehicle accident, and the equitable apportionment claims are still pending until such time there is a reallocation, and it is found to be in good faith by the trial court. If during that process, the settlement falls through for some reason, that there's no reallocation, or that the allocation is not found in good faith, then again, both claims are still pending and consolidation is still at issue. Consolidation is proper when cases are of the same nature, arise from the same act or event, involve the same or like issues, and depend largely upon the same evidence. It is not required, however, that the two cases or multiple cases be identical. So, both of the pending claims in this 2013 case, excuse me, the equitable apportionment claim and the medical negligence claim are the same. Regardless of the different theories of negligence and the differing parties, they're both of the same nature. The equitable apportionment claim and the medical negligence claim in performing the August 22, 2014 radiofrequency ablation procedure. That's the same event at issue, the same act and event at issue in both of these cases, that procedure. That's the impetus for both of these claims. Both of these claims involve like issues and will depend on the same evidence at trial, the same facts here at issue. Both of these claims, the medical negligence and equitable apportionment claims, alleged medical negligence, in which case the parties have to prove what the proper standard of care is, that there was a negligent breach of the standard of care, and that the injury was proximately caused by the alleged breach of the standard of care. ADM and Nelson identified their expert witness, Dr. Benjamin, whose opinions are that there was a breach of the standard of care in the modality in which Dr. Chauvetier performed this procedure, and in misplacing the radiofrequency ablation needles, which caused the lesion to the nerves, and which proximately caused the injury she's claiming. Plaintiff identified Dr. Minori as her expert. Dr. Minori also says the same things, that there was a breach of standard of care in the modality in which Dr. Chauvetier performed this procedure, and in misplacing the needles, that that caused the lesion to the nerves, and proximately caused her injuries at issue here. There are agency and respondent superior claims raised by both the parties, ADM and Nelson, and plaintiff. These involve nearly identical parties. And what these claims do, the agency and respondent superior claims do, they all seek to hold the alleged principal liable for Dr. Chauvetier's actions in performing that procedure. You have an institutional negligence claim as against the hospital here. That seeks to hold, again, the hospital liable for Dr. Chauvetier's actions in performing the procedure. And the damages in both of these claims are the same. Both cases raised the same damages as a result of the radiofrequency ablation, and those damages are claimed as against the defendants. When you say the damages are the same, obviously there are damages that resulted from the motor vehicle accident that the medical defendants would not be responsible for. The motor vehicle defendants are, in terms of the issue of damages, responsible for the original motor vehicle accident damages or injuries, as well as the subsequent alleged medical malpractice, right? That's correct, Your Honor. So when you say that the injuries are the same, are we going back to the conversation I was having with Mr. Wetzel about what were the injuries in this case? And you're saying they're the same? I'm only addressing the injuries as alleged by medical negligence, as in the equitable apportionment claim alleging medical negligence and damages, and the medical negligence claim alleging damages related to that. Those are the damages I'm addressing. And those are the same, Your Honor. So without consolidating these two cases, then, the defendants here were forced to defend two cases that are of the same nature, involving medical negligence. They involve the same act or event, that is Dr. Chobotiya's actions in performing the radiofrequency ablation procedure, and involve the same issues and the same evidence at trial, with the ultimate risk here of plaintiff obtaining a double recovery and inconsistent verdicts if these two cases were to go to trial separately. And for those reasons, we believe it was error for the trial court to not consolidate these cases. If Your Honors have no questions for me, I'll yield my time. Thank you. Counsel, my name is Tim Shea. I'm here on behalf of Shelley Sasano. The first statement that came out of Mr. Wetzel's mouth was the most telling. He used the term several years. That's correct. In 2011, this is what this case is really about. In 2011, there was a minor impact with no property damage and no reported injuries to my client. This is one of the worst case scenarios of going to trial with a soft tissue injury arising from no property damage at all. And by the way, with the recent Supreme Court decision that's been entered, they get to blow up the photograph, no property damage. So what did my client do following this no property damage claim of which she didn't report an injury? She started off, she went to the emergency room. She then went to her primary care physician. She went to a chiropractor. She went to a physical therapist. She went to pain management. She went to pain management again. And lo and behold, three years later, unfortunately, she meets Dr. Shabatiya, who injures the C11 and C12 nerves, which have never been injured before and which are a new and distinct injury, separate in the parts, not in aggravation. So the big reason for the allocation between ADM and ourselves was not to defraud the court or to place them in an improper position, but to recognize under the 15.01 Approximate Cause Jury Instruction that there is a very difficult standard of proof that the plaintiff must face in establishing over this three-year period of time in this minor accident that the injuries that are still being claimed that lead to the radiofrequency ablation procedure in 2014 are still constantly connected to this minor traffic accident. Now, we attached as evidence for this motion to approve the settlement the discovery deposition of Dr. David Fletcher. Albeit it was not my position, but nevertheless it is a consideration that the court can make when determining the allocation or whether this is a good-faith settlement. And if you were to believe, or if a jury were to believe Dr. Fletcher, then Dr. Fletcher said basically she suffered a minimal injury at best and any treatment following the emergency room visit would be wholly unrelated, which would sever the causal connection, which would never allow us to come to 2014 and connect this minor motor vehicle accident to this radiofrequency ablation procedure. We are the only ones that offer any medical testimony or evidence whatsoever. Counsel did not offer, either of them, offer any testimony that there is a medical basis, a medical opinion, because that's what the jury has to have, a medical opinion establishing a causal relationship between 2011 and 2014. What they do is they use my client's testimony of her ongoing complaints leading up to the 2014, which Dr. Fletcher says is related to the general of this disease, unrelated to a trauma of a small motor vehicle accident. So the court considered everything. The court considered the evidence presented before it, made a determination, we followed the recipe of patent, we made an actual allocation recognizing the probability of establishing a causal connection opinion up to 2014 was tenuous at best. And that also goes to the consolidation issue, because we really have two cases here. And we have a significant amount of treatment that occurs prior to 2014 from a motor vehicle collision, and then we have this incident of a new injury. And this appeared in front of two judges that determined the same evidence and even later evidence and said we don't believe they should be consolidated. It is within their discretion and it's an abusive discretion standard to state otherwise. Mr. Wetzel's cases do not cover this case in the least bit. The one case that I believe he considered, the Rydell case, said the judge failed to consider the evidence, so they sent it back to consider, because he even wrote in his opinion, it's not for my consideration, it's not my decision to consider whether this is a proper allocation. And the court said, yeah, you've got to consider all this. Well, our judge considered all of this. He considered the opinions, he considered the fact that we have three years in time. If you look at that Patton case and almost all of these medical negligence cases that follow, it's within a very short period of time that there's an act of medical negligence in relation to the inciting motor vehicle accident or inciting fall or the initial trauma. In this situation, we've got a substantial period of time, three years, where much happens and the relationship is tenuous, which I recognize, which Mr. Stocks recognized, and that's how the allocation took place. Judge Forbes considered that we met the initial burden of establishing good faith. So then the burden shifted to the defendants. And absent fraud, which there's no fraud here whatsoever, then good faith is found and the allocation and the settlement is approved. And that is the problem with the case that Mr. Wetzel and Mr. Toth are making in their oral argument, or making in their briefs, and Mr. Wetzel made in his oral argument. There is no consideration of the possibility that a jury could find the 2014 radiofrequency ablation has no relationship to the initial motor vehicle accident. They have never covered that. They simply assume because we have... We filed a separate cause of action. We didn't even include that. And by the way, if the court were... If this were to go to trial, we wouldn't even have to prove medical negligence, but we would still have to prove a temporal and causal relationship. So I believe that's where their argument fails. Their failure to recognize the three years and all the things that happened, and Judge Forbes did consider that salient fact that supports the distribution and the allocation of the settlement of $170,000, which the majority of the medical bills actually covered, and $5,000 for a tenuous claim that $5,000 was allocated according to patent. Unless you all have something else to say. I know, Justice Harris, you were talking about the lack of jurisdiction and standing, and Mr. Stites is going to address that. I have a question. Yes. Assume we affirm. Yes. What happens next? ADM, is that case, 13L, is dismissed. We proceed to trial on the medical negligence case only, which I filed as a separate cause of action, 15L. And what happens to the recovery from that? If there is a recovery. They get a $5,000 set off. If you find they even have jurisdiction to raise that issue. That's the big F. Thank you. Okay. Attorney Stocks, on behalf of ADM and Nelson, generous payers of money, I don't believe this court has jurisdiction to resolve this issue because the good faith finding was not dispositive to any claim or relief in the 2013 action. No contribution claim was discharged by a good faith finding. A good faith finding is not necessary for our agreement to resolve the case. And, in fact, if you read the settlement agreement, there is no contingency or term in the settlement agreement that makes it dependent upon a good faith finding being approved. So it's an advisory determination, advisory to inform the set off that may happen in the subsequent medical malpractice case. Whether that can be collaterally attacked there or whether it is right post-verdict in determining what the set off is, it's not my issue to deal with. If I just throw that out, that's probably where some folks may determine that question is resolved. I want to comment that it wasn't the, and it has not been a reversal of course for ADM at any point in time in this case, that it had some responsibility for that medical malpractice. We filed an equitable apportionment claim as opposed to a claim sounding in contribution. And there's a significant reason for that. It's that we wanted to retain the position that the injuries were divisible injuries, separate injuries because we always anticipated that we would pursue the argument that we had no liability because that was not reasonably medically necessary treatment from our accident. And even if so, the consequences of that new body part being injured and all of the sequelae from it would be something for which we would either, under apportionment, be wholly indemnified for by the doctors or even if we had contribution, wholly indemnified for via contribution. And under those circumstances, I don't see where there's any exposure to double recovery because plaintiff at most is only going to double recover $5,000 from the subsequent medical malpractice. Mr. Stack, I know that you just explained the third-party claim sounding in equitable apportionment as opposed to being grounded in contribution. However, what's your view as to whether or not the medical defendants in this case would be termed successive tortfeasors pursuant to the Contribution Act? They are successive tortfeasors, but the Contribution Act requires the indivisibility of injury. But that's the true touchstone of contribution liability. Whether they're consecutive, concurrent, successive, they can all be exposed to contribution liability if the injury is indivisible. Okay. In the trial court, ADM asserted that medical defendants did not have standing to challenge the good faith nature of the settlement, correct? That is correct. I'm not going to assume defective settlement, but in the 2013 action, it did not impact any relief issue drawn in any manner in the 2013 action. Because the good faith finding is the mechanism by which you get court approval of discharging the claim of another. We had no contribution claims against us. So typically, if I'm a settling tortfeasor, I want to pay dollars and get free of the case. I need a good faith finding so that those other tortfeasors that have claims against me will be discharged. Those issues aren't present in this case. So we're really getting an advice from the first court to apply in the second action for the determination of set-off. That was going to be my question here. There's case law that says a non-settling defendant cannot challenge the good faith nature of a settlement absent a contribution claim having been filed. So in this case, are you saying that because you're dealing with indivisible injuries, you're even one step farther removed from the medical defendants being able to challenge the settlement? Because the injuries are divisible, yes, we are one step farther away. Let's assume that medical defendants wanted to preserve their right and protect their interest in the years this has been ongoing. They could have filed a contribution claim in the 15 action under the auspices that there was a common or indivisible injury for which they should get a share from ADM. But they did not. It is not the lack of consolidation. It is not the lack of a good faith finding that puts them in the position they're in. It's their inaction in the 15 action to take those steps legally to preserve their rights. And now the statute of limitations has expired. It should be no wonder that the timing for my settlement, the timing for our motions for summary judgment that were pending at the time, is that we were monitoring the case to assure we were not going to be brought in through the back door in a 2015 action. They never took those steps they could have taken if they wanted to preserve their right in the monies we pay. So finally, the settlement goes down in accordance with patent that says in the disjunctive we either reach an agreement as part of our settlement allocating the funds or, as it states expressly, we go to the court for a good faith finding. And it is in that latter context a good faith finding is needed when you have claims or assertions that are at issue drawn by a non-settling tortfeasor that needs protection, that requires the good faith finding, so the settling tortfeasor can discharge all the claims against them. We still don't have those claims. Those claims are stale. So we're now in a situation where, in the opinion of A.D.M. Nelson, we have free riders upon a substantial settlement for a three-year window for which they never had exposure anyway that is justified by the only evidence in the record that is a good faith, reasonable settlement of the claims that Ms. Sassano had against A.D.M. But we have no issue drawn that ever required this good faith finding for A.D.M. to exit the case and have no exposure to anyone. It's the contribution claim. It's the contribution act that triggers the need for good faith. So if they would raise the entirety of this consideration in the post-verdict set-off issue in the 15 case, A.D.M. is out. Whether this good faith finding is affirmed here, whether that could be collaterally attacked at that time, is not an issue that A.D.M. needs to take a position on. I think by merely suggesting it, I think the suggestion is pregnant with where I think that issue is right. But for purposes of this appeal, I submit none of these issues are right. And finally, on the consolidation, it is moved. It's always interlocutory. It's interlocutory until you start a trial and have a verdict and have a substantial right prejudice. What substantial right have they identified was prejudiced by the failure to consolidate? Inefficient defense because of two actions? No. They weren't denied any claims because they haven't tried the case. There has been no substantial right that has been impacted in the failure to consolidate. So we submit that there are no issues that are right for appellate review. And I would also note that are they asking this court to reverse a favorable final order dismissing them in the 13 action? It's not even a prejudicial order. The final order is not even prejudicial to the third-party defendants. And now they want to interlope and say that they can reinstate and revive the plaintiff to prime defendant claim. They have no standing for that. They're not involved in that claim. And if the good faith finding is overruled, that does not ipso facto revive that claim. And the terms of the settlement agreement do not require the good faith finding. That's our contract, and we didn't require a good faith finding to resolve our case. And they got out for free in our case. So for those reasons, we respectfully submit that the proper course is the dismissal of this appeal. Thank you. Thank you, counsel. Rebella? Briefing, Your Honor, on the issue of consolidation and standing in jurisdiction. It's the appellant's position that the 2013 case by the settlement and dismissal makes that case final. The litigation is then determined on its merits at that point, and nothing remained for the trial court to do, which then at that point draws into issue all the previous interlocutory orders, including the consolidation issues. If we couldn't attack that, then we would never be able to, nor would anybody else be able to bring an issue of consolidation after dismissal on appeal. And that certainly can't be the intent of that. With that, Your Honor, I'll give the rest of the time to my colleague, Mr. Watson. Mr. Shea talked about how this was a minor accident, but this is a minor accident they settled for $175,000. That doesn't sound like a minor accident. This is a significant chunk of money which they improperly allocated between the two cases. Not only that, Mr. Shea now takes the position that, well, the two were unrelated, yet in his good faith finding, as I read before, he said they were related. That's what was before the court. That's what the court was determining. So were they related or weren't they related? He claims that they were. There was no evidence and no finding of the court that they weren't related. There's nothing. There's nothing in the court's order. There's nothing that says that, hey, these two were unrelated, and so, hey, $5,000 is adequate. There's no finding like that in this record. The courts, if you look at the actual order issued by the court, they do not deal with the issue of allocation. They provide no explanation for it other than to say, hey, it's only $5,000 and all the defendants are now going to be limited in their other case to a $5,000 set-off. There's no explanation. We've given lots of explanations here. We've tried to, after the fact, drum up reasons for this allocation, but that was not the finding of the court. The court never made that particular finding. Thank you. What about Mr. Stack's statement that there was no need even to have a good faith finding in this case? Simply plaintiff and defendant could settle their case. There would be a dismissal of the underlying action, which would dispose of the third-party litigation, and now you're off to litigate the malpractice case. Your Honor, I actually do not dispute that. What I have a problem with is the $5,000 allocation, which was the whole reason for the good faith finding, manufactured by the plaintiff in the first place. So are we to consider that, whether or not that is dispositive when the time  this allocation should be determined a settled issue, such that it can't be attacked in the medical malpractice claim, in terms of set-off? As it stands right now, we cannot collaterally attack that. We needed to attack it at the very end of the 2013 case, because otherwise we would not have a mechanism to go back and revisit this in the 2013 case. The problem that we have is this $5,000 set-off. This is our time to attack it. We don't have another one. So you're saying that you're going to be stopped in the future from being able to claim that there shouldn't be more than a $5,000 set-off? I worry that that would be the case, Your Honor. I honestly don't know, because I don't know that that particular issue has gone up on appeal, and I don't think that there's any good case law on that. But we do need to address it at this point in time and figure it out, so that we are not bound at the end of this case that we sat on our rights, we didn't raise the issue, and are not able to present it in the other case. I would point out that Patton, in several of the other cases, where there is not an allocation in there, basically found that, well, the issue of a set-off is you can have the full amount, or I believe you can have any other evidence presented in the case at the time of that set-off. We would be fine with that if we could actually present evidence at the end of our 2015 case to determine the proper set-off for the amounts submitted by ADM. But as of right now, we'd be precluded from doing so if we didn't raise the issue at this time. This is really, we're appealing final judgment in the 2013 case. We're not, and by appealing that final judgment, as Mr. Tote said, we're appealing all the interlocutory orders that were going on in that case. If we don't do it now, we can't do it later. And so that's why we're doing it, we're appealing the final judgment. Thank you.